## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PICAYUNE RANCHERIA OF THE
CHUKCHANSI INDIANS, a federally-
recognized Indian tribe,
46575 Road 417
Coarsegold, CA 93614;

MORRIS REID,
Chairman, Tribal Council
Picayune Rancheria of the Chukchansi Indians,
46575 Road 417
Coarsegold, CA 93614;

DORA JONES,
Vice Chair,  Tribal Council
Picayune Rancheria of the Chukchansi Indians,
46575 Road 417
Coarsegold, CA 93614;

DIXIE JACKSON,
Secretary,  Tribal Council
Picayune Rancheria of the Chukchansi Indians,
46575 Road 417
Coarsegold, CA 93614;

HAROLD HAMMOND, SR.,
Member-at-large,  Tribal Council
Picayune Rancheria of the Chukchansi Indians,
46575 Road 417
Coarsegold, CA 93614,

       Plaintiffs,

   v.

TRACIE STEVENS,
Chairwoman
National Indian Gaming Commission
1441 L Street NW, Suite 9100
Washington, DC 20005;

JO-ANN SHYLOSKI
Associate General Counsel
National Indian Gaming Commission
1441 L Street NW, Suite 9100
Washington, DC 20005;

MARIA GETOFF,
Senior Counsel
National Indian Gaming Commission
1441 L Street NW, Suite 9100

Case No. _____

1

Washington, DC 20005; and

UNITED STATES NATIONAL INDIAN
GAMING COMMISSION
1441 L Street NW, Suite 9100
Washington, DC 20005,

         Defendants.

## COMPLAINT

### INTRODUCTION

1.     This is a civil action against the United States National Indian Gaming Commission and its officials (collectively, the "Chairwoman," the "Commission," the "NIGC," or "Defendants") under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.* and 701, *et seq.*, seeking mandamus and related relief compelling the Commission to comply with its statutory duty to approve and publish gaming ordinance amendments submitted by the Picayune Rancheria of the Chukchansi Indians ("Tribe").

2.     The Tribe owns and operates the Chukchansi Gold Resort & Casino (the "Casino"), located 711 Lucky Lane, Coarsegold, CA 93614. The Casino is operated pursuant to IGRA, a Tribal-State Compact Between the State of California and the Chukchansi Indians, approved by the Secretary of the Interior on May 5, 2000, and the Tribe's Gaming Ordinance. The Tribe's Gaming Ordinance originally was approved by the Commission on June 27, 1996. Amendments to the Tribe's Gaming Ordinance were approved by the Commission on December 3, 2001, February 15, 2002, December 9, 2003, January 11, 2008, March 27, 2009, and April 16, 2010.

3.     Plaintiffs Morris Reid, Dora Jones, Dixie Jackson, and Harold Hammond, Sr. comprise the voting majority of the Tribe's seven-member governing body, its Tribal Council. Pursuant to the authority of the Tribal Council, Plaintiffs adopted Gaming Ordinance amendments and submitted them

to the Commission pursuant to 25 C.F.R. Part 522.  The Commission received the submissions on July 31, 2012 and October 22, 2012, respectively.

4.     Pursuant to IGRA and the corresponding regulations, the Commission has 90 days to either approve or disapprove of amendments submitted for approval.     Thus, the deadline for Commission to either approve or disapprove Plaintiff's submissions was October 29, 2012 and January 21, 2013, respectively.   The Commission may only disapprove gaming ordinance amendments if a "tribal governing body did not adopt the ordinance or resolution in compliance with the governing documents of a tribe" or a "tribal governing body was significantly and unduly influenced in the adoption" of the amendments.  If amendments are disapproved, the Commission must "provide written notification of necessary modifications . . . to bring such ordinance or resolution into compliance."

5.     In this case, the Commission either disapproved the submissions on or around January 17, 2013, or it failed to take the action mandated by IGRA within the express deadline set by the statute.  If the Commission disapproved the submissions, it did not assert that Plaintiffs' submissions did not meet the requirements of IGRA or the Federal regulations and did not provide written notification of the necessary modifications as required by IGRA and Federal regulations.   Regardless of whether the Commission disapproved Plaintiffs' submissions or failed to act within the express deadline, the Commission's action or failure to act was in violation of IGRA and the Federal regulations.

6.     On January 17, 2013, the Commission declared Plaintiffs' submissions "withdrawn," despite the fact that Plaintiffs never withdrew the July 31 or October 22 submissions.  The Commission based its "withdrawal" of Plaintiff's submissions on communications from a third party known as the "Lewis Group," which the Commission identified only as "Tribal Council of the Picayune Rancheria."  Thus, in addition to violating IGRA either by disapproving Plaintiffs' Gaming Ordinance amendments or

failing to take action within 90 days, the Commission arbitrarily and capriciously recognized an entity that is not the duly-elected and legitimate governing body of the Tribe.

7.     Plaintiffs seek orders from this Court declaring invalid and setting aside the Commission's actions concerning Plaintiffs' Gaming Ordinance amendments and its actions recognizing the Lewis Group. In addition, Plaintiffs seek an order compelling the Commission to, within 30 days, take action regarding Plaintiffs' gaming ordinance amendment submissions in compliance with IGRA and the Federal regulations.

## JURISDICTION

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), and 1361 (mandamus against federal official).

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and laws of the United States, including but not necessarily limited to the following provisions: U.S. Const. Art. I, § 8, cl. 3 (Indian commerce clause); U.S. Const. Amend. V (due process clause); the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* and § 701 *et seq.*; 28 U.S.C. §§ 2201 and 2202 (declaratory judgments); the All Writs Act, 28 U.S.C. § 1651; the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*; and the Federal common law.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1361, in that this is a civil action in the nature of mandamus seeking to compel an officer or employee of the United States or an agency thereof to perform a duty owed to Plaintiffs, which duty arises under the Constitution and laws of the United States, including but not necessarily limited to the provisions previously described.

11.     The sovereign immunity of the United States has been waived with respect to the subject matter of this action and the relief requested herein by the APA, 5 U.S.C. § 702.   The Commission's action was final for purposes of the APA pursuant to 25 U.S.C. § 2714, which states that decisions concerning review of existing gaming ordinances shall be final agency decisions for purposes of the APA, and pursuant to the fact that the Commission acknowledged that there was no further appeal of the Commission's actions available to Plaintiffs.

## VENUE

12.     Venue in this action lies in this Court pursuant to 28 U.S.C. §§ 88 and 1391(e), in that this is a civil action against the United States, an agency of the United States and officials and employees of the United States and an agency thereof, each acting in his or her official capacity or under color of legal authority, and one or more of the defendants reside, and a substantial part of the events or omissions giving rise to the claim occurred, within the judicial district of the United States District of Columbia.

## PARTIES

13.     Plaintiff the Picayune Rancheria of the Chukchansi Indians (the "Tribe" or "Picayune Rancheria") is a federally-recognized Indian Tribe located in Madera County, California.   Pursuant to IGRA and the Tribe's Gaming Ordinance, the Tribe owns and operates the Chukchansi Gold Resort & Casino (the "Casino"), located 711 Lucky Lane, Coarsegold, CA 93614.

14.     Plaintiff Morris Reid is an adult natural person and a member of the Picayune Rancheria of the Chukchansi Indians and the Tribe's governing body, the Tribal Council.   Pursuant to the Tribe's Constitution and governing laws, Mr. Reid was duly elected to the Tribal Council on December 3, 2011 and seated on December 26, 2011 for a two-year term.   Mr. Reid was elected by the majority of the

Tribal Council as Chairman of the Tribal Council.  Mr. Reid brings this action in his official capacity as Chairman and a member of the Tribal Council.

15.    Plaintiff Dora Jones is an adult natural person and a member of the Picayune Rancheria of the Chukchansi Indians and the Tribe's governing body, the Tribal Council.  Pursuant to the Tribe's Constitution and governing laws, Ms. Jones was duly elected to the Tribal Council on December 3, 2011 and seated on December 26, 2011 for a two-year term.  Ms. Jones was elected by the majority of the Tribal Council as Vice Chair of the Tribal Council.  Ms. Jones brings this action in her official capacity as Vice Chair and a member of the Tribal Council.

16.    Plaintiff Dixie Jackson is an adult natural person and a member of the Picayune Rancheria of the Chukchansi Indians and the Tribe's governing body, the Tribal Council.  Pursuant to the Tribe's Constitution and governing laws, Ms. Jackson was duly elected to the Tribal Council on December 3, 2011 and seated on December 26, 2011 for a two-year term.  Ms. Jackson and was elected by the majority of the Tribal Council as Secretary of the Tribal Council.  Ms. Jackson brings this action in her official capacity as Secretary and a member of the Tribal Council.

17.    Plaintiff Harold Hammond, Sr. is an adult natural person and a member of the Picayune Rancheria of the Chukchansi Indians and the Tribe's governing body, the Tribal Council.  Pursuant to the Tribe's Constitution and governing laws, Mr. Reid was duly elected to the Tribal Council on December 3, 2011 and seated on December 26, 2011 for a two-year term.  Mr. Hammond and is a Member-at-large of the Tribal Council.  Mr. Hammond brings this action in his official capacity as a member of the Tribal Council.

18.    Defendant United States National Indian Gaming Commission is an executive agency of the United States government, established and organized pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. 2701 *et seq.*, with offices located at 1441 L Street NW, Suite 9100,

Washington, DC 20005. The National Indian Gaming Commission has certain statutory enforcement powers and responsibilities under the Indian Gaming Regulatory Act, including but not limited to the power and responsibility to approve or disapprove tribal gaming ordinances and amendments to such gaming ordinances, issue temporary closure orders, and levy and collect civil fines.

19.     Defendant Tracie Stevens is the Chairwoman of the United States National Indian Gaming Commission ("Chairwoman"), with offices located at 1441 L Street NW, Suite 9100, Washington, DC 20005. The Chairwoman is the chief executive officer of the United States National Indian Gaming Commission, and therefore, on behalf of the NIGC, has certain statutory enforcement powers and responsibilities under the Indian Gaming Regulatory Act, including but not limited to the power and responsibility to approve or disapprove tribal gaming ordinances and amendments to such gaming ordinances, issue temporary closure orders, and levy and collect civil fines. The Chairwoman may delegate her powers and responsibilities to lower-level officials of the Commission.

20.     Defendant Jo-Ann Shyloski is Associate General Counsel of the National Indian Gaming Commission, to whom certain powers and responsibilities of the Commission have been delegated.

21.     Defendant Maria Getoff is Senior Counsel of the National Indian Gaming Commission, to whom certain powers and responsibilities of the Commission have been delegated.

## GENERAL ALLEGATIONS

**Tribe**

22.     The Picayune Rancheria of the Chukchansi Indians (the "Tribe or "Picayune Rancheria") is a federally-recognized Indian tribe and possessing a government-to-government relationship with the

United States. *See Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 77 Fed. Reg. 47868 (Aug. 10, 2012). The Tribe is organized under a constitution adopted on November 7, 1988 ("Constitution"), a true and complete copy of which is attached hereto as **Exhibit A**.

23. Pursuant to the Tribe's Constitution, the governing body of the Tribe is the Tribal Council. *See Constitution* (Exhibit A), Art. IV, § 2. The Tribal Council is made up of seven members. *Id.* Under the Tribe's Election Ordinance, a true and complete copy of which is attached hereto as **Exhibit B**, the members of the Tribal Council are elected in an election held on the first Saturday of December each year. *Election Ordinance* (Exhibit B), Art. IV, § 1. The General Council is made up "of all enrolled members of the Tribe, 18 years of age or older." *Constitution* (Exhibit A), Art. IV.

## Background of underlying Tribal governance dispute and abuse of Casino resources

24. Underlying the Tribe's dispute with the Commission is a dispute between separate tribal groups over which represents the legitimate majority of the Tribal Council.[1] In brief summary, Plaintiffs Reid, Jones, Jackson, and Hammond (also referred to as the "Reid Council") consist of four individuals who were each duly elected to the Tribal Council on December 3, 2011, pursuant to an election held by the previous Tribal Council under the Tribe's Constitution and Election Ordinance and overseen and certified by an independent auditor. *See* Certified Election Results, a true and complete copy of which is attached hereto as **Exhibit C**. A group of incumbent Tribal Council members, who lost the ruling majority in the December 3, 2011 election (the "Lewis group"), has prevented the duly-elected Reid Council from assuming its legitimate governance position since the election. The Lewis Group maintained its control over the Tribe by

---

[1] The fact that the Tribal Council is the Tribe's governing body is not disputed. Rather, the dispute is over which group constitutes the legitimate composition of the Tribal Council.

moving the Tribal government into the Casino to exploit Casino security and resources, and through threats, violence, intimidation, withdrawal of Tribal benefits, and disenrollment. The Lewis Group filled the Tribal Council seats of the exiled Reid Council through sham elections, where both the candidates and those allowed to vote were tightly controlled, and through foregoing elections altogether and appointing associates to the "Tribal Council."[2]

25.     On the morning February 27, 2012, a large number of Tribal members supportive of Plaintiffs entered the Tribal Offices to demand the installation of the duly-elected Tribal Council to its rightful governance. The Tribal members invited Plaintiffs to take their rightful position in the Tribal Offices. The Lewis Group immediately responded and occupied a separate Tribal building and hired private security guards to patrol the area and intimidate Plaintiffs' supporters. The Lewis Group also began conspiring to forcibly and violently remove those inside the Tribal Offices by "burning them out." *See* Email from K.L. Fleck dated February 27, 2012, a redacted copy of which is attached hereto as **Exhibit E**. The Madera County Sheriff arrived on the morning of February 27, 2012. Plaintiffs and their supporters, concerned that the Lewis Group or its supporters might engage in violence under cover of night, requested that the Sheriff maintain a visible presence at the Tribal governmental offices overnight. The Sheriff refused, however, and stated that the Lewis Group's private security would provide sufficient security.

26.     When night fell, the Lewis Group and its supporters began attacking the Tribal governmental office and the people inside. The attackers cut power and utilities to the building, leaving those inside in the dark and without water. They then destroyed windows, emptied several cans of bear repellant pepper spray into the building, threw bricks and other debris at those inside

---

[2] Recently, the Lewis Group splintered into two factions: the Lewis Group and the "Ayala Group." At the time of this filing, the Ayala Group appears to have acquired physical control over the Casino and Tribal offices, while the Lewis Group appears to be in control of one or more of the Tribe's bank accounts, including the Casino accounts. *See, e.g.*, Carmen George & Tiffany Tuell, *Chukchansi financial concerns raised*, Sierra Star (March 20, 2013), a true and complete copy of which is attached hereto as **Exhibit D**.

through the window, and at one point threw a burning log into the building, posing a serious risk of burning down the building with the inhabitants still inside. *See Incident Report of Officer Blehm*, a true and complete copy of which is attached hereto as **Exhibit F**.   The attacks lasted throughout the night.   The next morning, supporters of Plaintiffs attempted to bring food and water to those inside the building but were stopped by Lewis Group supporters.   One supporter of the Plaintiffs was stabbed during the ensuing confrontation.   The Lewis Group's private security force either participated in or oversaw the Lewis Group's violence against Plaintiffs and their supporters. Officers from the Madera County Sheriff witnessed the violence but did not intervene despite several 9-1-1 emergency calls. *See Blehm Report* (Exhibit F).   The incident was reported in several newspapers. *See, e.g.*, Ian Lovett, *Power Struggle Over Indian Tribe Splinters Into Violence In California*, New York Times (February 28, 2012), a true and complete copy of which is attached hereto as **Exhibit G**.

27.   On March 10, 2012, the Lewis Group conducted what it called an "election" to fill Plaintiff Hammond's seat and a "General Council meeting."   However, at the direction of the Lewis Group, a group of individuals claiming to represent the Tribe's Gaming Commission purported to ban the Plaintiffs and all known supporters of Plaintiffs from Tribal lands and the Casino, immediately prior to the Lewis Group's events. *See, e.g.*, 30- Day Debarment Order for Morris Reid, a true and complete copy of which is attached hereto as **Exhibit H**.   The "election" was held on Tribal lands, and the "General Council meeting" was held on the fourth floor of the Casino's parking garage.   In order to coerce Tribal members other than Plaintiffs' supporters to vote in their "election" and attend their "meeting," the Lewis Group used Casino funds to charter buses to transport Tribal members to the "meeting," offered free lodging at the Casino for those Tribal members, and paid Tribal members (excluding the members it had banned) either $1,000 or

$1,500 to attend its events and "fully participate." *See* Redacted Check issued to Tribal member, a true and complete copy of which is attached hereto as **Exhibit I**. Finally, the Lewis Group enforced its ban on Plaintiffs and their supporters with Casino security and by using Casino funds to employ armed private security. Members of the Lewis Group's private security force, who were armed and concealed their identity with masks, patrolled the Casino and Tribal lands and threatened and intimidated several Tribal members.

28. In addition to the visible abuse of Casino resources, Plaintiffs received information that members of the Lewis Group have embezzled unknown amounts of Casino revenues and/or taken cash directly out of the Casino in violation of 18 U.S.C. §§ 1167, 1168. *See, e.g.*, Letter to Tribal membership dated February 28, 2013, a true and complete copy of which is attached hereto as **Exhibit J** (describing a forensic audit).

**Bureau of Indian Affairs**

29. After the December 3, 2011 election, the Acting Chair of the Tribe's Election Committee sent the verified and undisputed results of the election to the Superintendent of the Bureau of Indian Affairs Central California Agency and requested that the BIA recognize the new Tribal Council. *See* Report of Tribal Election, a true and copy of which is attached hereto as **Exhibit K**. Plaintiffs made several requests that the BIA recognize them as the duly-elected governing body for government-to-government purposes. However, the BIA Superintendent publicly stated that it would not issue a decision recognizing either the Reid Council or the Lewis Group, and told Plaintiffs that the BIA would not deal with either group. *See* Eddie Jiminez, *Bureau of Indian Affairs to stay out of Chukchansi election dispute*, Fresno Bee (Dec. 28, 2011); Marc Benjamin, *Chukchansi Indians tribal council dispute stalls*, Fresno Bee (Jan. 13, 2012);

Carmen George, *BIA Says Chukchansi People Can 'Work it Out'*, Sierra Star (Feb. 9, 2012) – true and complete copies of which are attached hereto as **Exhibit L**.

30.      However, during an April 2, 2012 meeting, the BIA Superintendent suggested that he was dealing with the Lewis Group, even though no decision had been issued.  On April 16, 2012, Plaintiffs' counsel sent a letter to the BIA Superintendent, requesting that he clarify his conflicting statements.  *See* Letter dated April 16, 2012 from Steven J. Bloxham to Superintendent Troy Burdick, a true and complete copy of which is attached hereto, without enclosures, as **Exhibit M**.  In the letter, Plaintiffs' counsel advised the BIA Superintendent that dealing with an unrecognized entity and unofficially recognizing a governing body without issuing a written decision are each a violation of federal law and policy.  *Id.*  Plaintiffs' counsel further advised the BIA Superintendent that any decision by a BIA official does not go into effect until it until the time to appeal expires without a notice of appeal being filed, and the time to appeal a decision does not begin to run until all interested parties are informed of the decision in writing.  *Id.*

31.      After receiving no response from the BIA Superintendent, Plaintiffs filed a Freedom of Information Act ("FOIA") request, seeking any and all correspondence between the BIA and the Tribe regarding the Tribe's "self-determination" contract entered into under the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. § 450 *et seq.*  *See* FOIA Request dated May 10, 2012, a true and complete copy of which is attached hereto as **Exhibit N**. The FOIA response confirmed that the BIA was indeed dealing with the Lewis Group on a government-to-government basis without having issued a written decision and informing all interested parties.  Accordingly, on June 19, 2012, Plaintiffs appealed the BIA Superintendent's decision.  *See* Notice of Appeal of Superintendent Burdick's Decision, a true and complete copy of which is attached hereto, without exhibits, as **Exhibit O**.

32.     On November 21, 2012, the Regional Director of the BIA Pacific Region issued a decision affirming the BIA Superintendent's decision. Plaintiffs appealed the Regional Director's decision to the Interior Board of Indian Appeals ("IBIA") on December 20, 2012, and therefore the decision never went into effect. *See* Notice of Appeal of Regional Director Dutschke's November 21, 2012 Decision, a true and complete copy of which is attached hereto, with the November 21, 2012 Decision attached, as **Exhibit P**. The appeal before the IBIA is currently pending.

33.     Through subsequent FOIA requests, Plaintiffs learned that the BIA Pacific Region has continued to recognize the Lewis Group for government-to-government purposes in violation of federal law and policy, and despite the fact that the Pacific Region lacks jurisdiction during the IBIA appeal. Further, the Pacific Region has made such decisions without informing interested parties with the intent to deprive Plaintiffs of their right to appeal and avoid review. Accordingly, Plaintiffs filed a second appeal of the Pacific Region's pattern and practice violating federal law and Department policy on March 20, 2013. *See* March 20, 2013 Notice of Appeal, a true and complete copy of which is attached hereto, without exhibits, as **Exhibit Q**. Plaintiffs also recommended that the IBIA consolidate the two appeals. *See* Notice of Related IBIA Appeal and Request to Adjourn Briefing Schedule, dated March 20, 2013, a true and complete copy of which is attached hereto as **Exhibit R**. The second appeal and request to consolidate both appeals are currently pending.

## Federal law governing Gaming Ordinance amendments

34.     Pursuant to IGRA and the corresponding Federal regulations, the Commission must, "[n]o later than 90 days after the submission" of amendments, either approve the amendments or disapprove the amendments" and notify a tribe of its right of appeal" the disapproval. 25 U.S.C. § 2712(b). The Commission may only disapprove the amendments if a

"tribal governing body did not adopt the ordinance or resolution in compliance with the governing documents of a tribe" or a "tribal governing body was significantly and unduly influenced in the adoption" of the amendments.  25 C.F.R. §522.7.  Furthermore, if the Commission disapproves gaming ordinance amendments, it must provide written notification "of necessary modifications . . . to bring such ordinance or resolution into compliance."  25 C.F.R. 522.7.

## Gaming Ordinance Amendments and the Commission's violation of IGRA

35.     In response to the Lewis Group's misuse of Casino security, Casino funds, and Gaming Commission authority for political gain, and in response to allegations of embezzlement of Casino revenues, Plaintiffs adopted Tribal Council Resolution No. 2012-17 on March 15, 2012. *See* Picayune Tribal Council Resolution No. 2012-17, a true and complete copy of which is attached hereto as **Exhibit S**.  Resolution No. 2012-17 amended the Tribe's Gaming Ordinance in two ways:  (1) to limit and restrict communication between the Tribal Council and Gaming Commission to matters directly related to the regulation of the Casino; and (2) to prohibit the on-premises use of Casino security for any purpose not directly related to gaming and prohibit the off-premises use of Casino security for any purpose.  *Id.*  On March 23, 2012, Plaintiffs submitted the amendments to the Commission for review and approval, pursuant to 25 C.F.R. Part 522.  *See* Letter dated March 23, 2012 from Chairman Morris Reid to Chairwoman Tracie Stevens, a true and complete copy of which is attached hereto, without enclosures, as **Exhibit T**.  The NIGC acknowledged receipt of the amendments on March 27, 2012.  *See* Letter from Barbara Hazlip to Chairman Morris Reid, a true and complete copy of which is attached hereto as **Exhibit U**.  This first set of amendments is referred to as the "March 27 submission."  The 90-day deadline for action on the March 27 submission was June 25, 2012.  *See* 25 U.S.C. § 2712(b).

36.     Sometime before June 20, 2012, Eric Schalansky, the Sacramento Region Director for the NIGC, sent a letter to Amy Dutschke, Pacific Regional Director of the BIA.  In his letter, Region Director Schalansky noted Plaintiffs' March 27 submission, and observed that "there is an on-going tribal leadership at Picayune between Mr. Reid and Mr. Reggie Lewis."   However, Region Director Schalansky also acknowledged, "*Nonetheless, the NIGC Chairwoman's deadline to act on this ordinance amendment is Monday, June 25, 2012.*"   "Because of the Chairwoman's deadline of June 25, 2012," Region Director Schalansky requested that the BIA, no later than June 20, 2012, "issue a determination . . . as to the recognized government at Picayune when the ordinance amendment was enacted (March 15, 2012) so that the NIGC Chairwoman may determine whether the ordinance amendment was submitted by the recognized tribal government." A true and complete copy of Region Director Schalansky's letter to Regional Director Dutschke is attached hereto as **Exhibit V**.

37.     On June 15, 2012, shortly before the 90-day deadline to take action on the March 27 amendments, Defendant Getoff contacted Plaintiffs' counsel and requested that Plaintiffs withdraw the March 27 submission and resubmit the same amendments with additional amendments unrelated to the amendments under review.   In the spirit of cooperation with the Commission, Plaintiffs withdrew the March 27 submission.  *See* Letter dated June 15, 2012 from Steven J. Bloxham to Maria Getoff, a true and complete copy of which is attached hereto as **Exhibit W**.

38.     In a July 18, 2012 email, Defendant Getoff requested that Plaintiffs "not resubmit the ordinance until the leadership issue has been worked out."  *See* Email dated July 18, 2012 from Maria Getoff to Steven J. Bloxham, a true and complete copy of which is attached hereto as **Exhibit X**.  Defendant Getoff stated that the Commission could not take action on a submission by Plaintiffs until the BIA appeal process is completed.  *Id.*

39.     Notwithstanding Defendant Getoff's July 18, 2012 email, Plaintiffs adopted a second resolution, Resolution No. 2012-19, which re-adopted the original amendments and adopted the additional amendments requested by the Commission. *See* Picayune Tribal Council Resolution No. 2012-19, a true and complete copy of which is attached hereto as **Exhibit Y**. Plaintiffs submitted the new amendments on July 23, 2012, and the NIGC acknowledged receipt of the second submission of Gaming Ordinance amendments on July 31, 2012. *See* Letter dated July 23, 2012 from Chairman Morris Reid to Chairwoman Tracie Stevens, a true and complete copy of which is attached hereto as **Exhibit Z**; Letter dated August 1, 2012 from Barbara Hazlip to Chairman Morris Reid, a true and complete copy of which is attached hereto as **Exhibit AA**. This second set of amendments is referred to as the "July 31 submission." The 90-day deadline for action on the July 31 submission was October 29, 2012. *See* 25 U.S.C. § 2712(b).

40.     On October 17, 2012, again just before the 90-day deadline to take action, Defendant Getoff contacted Plaintiffs' counsel calling attention to a clerical error in the July 31 submission, in the form of an inadvertently deleted word.  Immediately, Plaintiffs adopted a correction of the clerical error, *nunc pro tunc* to the adoption of the amendments. *See* Picayune Tribal Council Resolution No. 2012-20, a true and complete copy of which is attached hereto as **Exhibit BB**. Plaintiffs sent the retroactive correction to Defendant Getoff by email on October 18, 2012 and by mail on October 19, 2012. *See* Letter dated October 19, 2012 from Steven J. Bloxham to Maria Getoff, a true and complete copy of which is attached hereto, without enclosures, as **Exhibit CC.** The NIGC acknowledged receipt of the retroactive correction on October 22, 2012. Letter dated October 22, 2012 from Barbara Hazlip to Steven J. Bloxham, a true and complete copy of which is attached hereto as **Exhibit DD**. This last submission is

referred to as the "October 22 submission." The 90-day deadline for action on the October 22 submission was January 21, 2012. *See* 25 U.S.C. § 2712(b).

41.     On October 19, 2012, Plaintiffs' counsel contacted Defendant Getoff via telephone. During the phone conversation, Defendant Getoff requested that Plaintiffs withdraw both the July 31 submission and the October 18 submission.   Defendant Getoff once again requested that Plaintiffs make additional amendments to sections unrelated to the amendments under review.

42.     Plaintiffs did not withdraw either the July 31 submission or the October 22 submission at any time.

43.     In an email correspondence dated October 22, 2012, Defendant Getoff informed Plaintiffs' counsel that "the October 18 submission is considered as a withdrawal of [Plaintiffs'] prior ordinance submission and as a new submission." *See* Email dated October 22, 2012 from Maria Getoff to Steven J. Bloxham, a true and complete copy of which is attached hereto as **Exhibit EE**. Defendant Getoff did not provide a legal basis to consider a Tribe's request for approval of amendments to a Gaming Ordinance automatically withdrawn without the Tribe's input. However, Defendant Getoff acknowledged that the NIGC was struggling with "the issue of whether [Plaintiffs] is the recognized tribal leader for purposes of NIGC regulation" and that the NIGC "need[s] guidance from the BIA on that issue." *Id.*

44.     On January 10, 2013, shortly before the deadline for the October 22 Submission, Defendant Shyloski contacted Richard Verri, an attorney for the Lewis Group, by phone and email. In her email, Defendant Shyloski attached both the July 31 submission and the October 22 submission.   A true and complete copy of Defendant Shyloski's January 10, 2013 email to Richard Verri is attached hereto as **Exhibit FF**.

45.     On January 10, 2013, Richard Verri responded to Defendant Shyloski's email and stated that he "will prepare a resolution . . . withdrawing the purported tribal gaming ordinance." Later that day, Mr. Verri emailed both Defendant Shyloski and Defendant Getoff a resolution adopted by the Lewis Group, purporting to withdraw Plaintiffs' July 31 and October 22 submissions. True and complete copies of Richard Verri's January 10, 2013 emails to Defendant Shyloski are attached hereto as **Exhibit GG**. A true and complete copy of the Lewis Group's resolution purporting to withdraw Plaintiffs' July 31 and October 22 submissions is attached hereto as **Exhibit HH**.

46.     On January 14, 2013, Defendant Shyloski emailed the BIA Pacific Regional Director, Amy Dutschke, attaching the Lewis Group's resolution purporting to withdraw Plaintiffs' July 31 and October 22 submissions. A true and complete copy of Defendant Shyloski's January 14, 2013 email to BIA Pacific Regional Director Dutschke is attached hereto as **Exhibit II**.

47.     On January 17, 2013, Defendant Getoff informed Plaintiffs via email that the NIGC had received a resolution, purportedly from "the Tribal Council of the Picayune Rancheria," withdrawing Plaintiffs' July 31 and October 22 submissions. *See* Email dated January 17, 2013 from Maria Getoff to Steven J. Bloxham, a true and complete copy of which is attached hereto as **Exhibit JJ**. However, Plaintiffs had not, at any time, withdrawn those submissions. Upon inquiry, Defendant Getoff and Defendant Shyloski declined to identify who sent the withdrawal correspondence. Plaintiffs inferred that the Commission received and accepted a resolution withdrawing the gaming ordinance amendments from the Lewis Group, and later confirmed this belief when a FOIA request revealed the purported resolution. Notwithstanding the fact that Plaintiffs did not withdraw its Gaming Ordinance amendment submissions, Defendant Getoff

stated that the Commission "closed the matter in light of the fact that the ordinance submission was withdrawn." *See* Email dated January 17, 2013 (**Exhibit JJ**).

48.     On January 29, 2013, Plaintiffs, through counsel, sent a letter to Defendant Stevens, with several questions regarding Defendant Getoff's January 17, 2013 email.  Letter dated January 29, 2013 from Steven J. Bloxham to Chairwoman Tracie Stevens, a true and complete copy of which is attached, without enclosures, as **Exhibit KK**.  Plaintiffs asked several questions regarding Defendant Getoff's email, including whether the action described in the email could be appealed. *Id.*

49.     On February 12, 2013, Defendant Shyloski sent a letter to Plaintiffs' counsel. *See* Letter from Jo-Ann Shyloski to Steven J. Bloxham, a true and complete copy of which is attached hereto as **Exhibit LL**.  In the letter, Defendant Shyloski advised Plaintiffs that they could not appeal Defendant Getoff's decision to any higher authority within the Commission. *Id.*

50.     Defendant Shyloski asserted that, because *someone* purported to withdraw Plaintiffs' submissions, the Commission's failure to approve them was not a decision. *Id.* Defendant Shyloski stated that "NIGC does not make recognition decisions; only the Bureau of Indian Affairs (BIA) makes such determinations." *Id.*   However, the BIA has not issued an effective decision regarding the governing body in this matter, as Defendant Getoff acknowledged, and therefore the NIGC could not have properly relied on a decision by the BIA.

51.     Despite the fact that appeals are still pending before the IBIA, the NIGC recognized the Lewis Group, or some group other than the Reid Council, as the Tribal Council. *See* February 12, 2013 Letter (**Exhibit LL**).  Although the NIGC disavowed making such a decision, it explicitly referred to the Lewis Group, or some other entity, as "the Tribal Council of the Picayune Rancheria." *Id.*   Relying upon that implicit recognition, the NIGC took direction from the Lewis

Group or other unidentified entity to consider Plaintiffs' Gaming Ordinance amendment submissions withdrawn.

52.     Plaintiffs have been damaged by Defendants' decision to disapprove their Gaming Ordinance amendments or failure to take action within IGRA's express deadline in that they have been deprived of their rights guaranteed by IGRA, including the right to the approval and recognition of essential gaming ordinance amendments.  Defendants' actions have also deprived Plaintiffs of their sovereign right to self-governance, and have denied Plaintiffs and their constituents of Casino revenues, which have been squandered by the misuse and alleged embezzlement by the Lewis Group.  Defendants' actions have also allowed the denial of Plaintiffs' and their constituents' fundamental civil and political rights including the right to vote in Tribal elections, the right to participate in Tribal government, and the right to speech and assembly.

**FIRST CLAIM FOR RELIEF**
**Enforcement of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.***

53.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 52 of this Complaint.

54.     The Commission is charged by law and the regulations with the duty to "[n]o later than 90 days after the submission" of amendments, either approve the amendments or disapprove the amendments" and notify a tribe of its right of appeal" the disapproval.  25 U.S.C. § 2712(b).

55.     The Commission may only disapprove the amendments if a "tribal governing body did not adopt the ordinance or resolution in compliance with the governing documents of a tribe" or a "tribal governing body was significantly and unduly influenced in the adoption" of the amendments.  25 C.F.R. §522.7.  Furthermore, if the Commission disapproves gaming ordinance amendments, it must provide written notification "of necessary modifications . . . to bring such ordinance or resolution into compliance."  25 C.F.R. 522.7.

56.     Pursuant to Tribal law and their authority as the Tribal Council, Plaintiffs adopted Gaming Ordinance amendments and submitted them to the Commission pursuant to 25 C.F.R. Part 522.

57.     Defendants either disapproved Plaintiffs' Gaming Ordinance amendments without following the procedures required by IGRA and the Federal regulations, or the Commission failed to take action regarding Plaintiffs' Gaming Ordinance amendments within IGRA's express 90-day deadline.

58.     In either case, Defendants' actions violated the Indian Gaming Regulatory Act, specifically 25 U.S.C. § 2716(b).

## SECOND CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 706

59.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 52 of this Complaint.

60.     The Commission is charged by law and the regulations with the duty to regulate the Tribe's Gaming Facility, including approval of gaming ordinance amendments, through government-to-government relations with the Tribe's governing body.   Accordingly, the Commission must recognize a Tribal governing body for purposes of those government-to-government interactions and regulations of the Gaming Facility.

61.     The Commission wrongfully disapproved Plaintiffs' Gaming Ordinance amendments without following the proper procedures or failed to take action regarding Plaintiffs' Gaming Ordinance amendments within 90 days.

62.     The Commission's action or failure to act concerning Plaintiffs' Gaming Ordinance amendment submissions constitutes final agency action because it marks the "consummation" of the agency's decision making process, whereby "rights or obligations have been determined," and

the decision is one from which "legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Further, the Commission acknowledged and informed Plaintiffs that no appeal was available.

63.     The Commission's action to either disapprove Plaintiffs' Gaming Ordinance amendments or fail to act within IGRA's express deadline is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law; is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and was without observance of procedure required by law.

64.     Plaintiffs have suffered legal wrong and have been adversely affected as a result of Defendants' actions.

65.     The relief requested in this Second Claim for Relief also is necessary and appropriate in aid of the jurisdiction of this honorable Court and is agreeable to usages and principles of law, within the meaning of 28 U.S.C. § 1651.

### THIRD CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 706

66.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 52 of this Complaint.

67.     The Commission is charged by law and the regulations with the duty to regulate the Tribe's Gaming Facility, including approval of gaming ordinance amendments, through government-to-government relations with the Tribe's governing body. Accordingly, the Commission must recognize a Tribal governing body for purposes of those government-to-government interactions and regulations of the Gaming Facility.

68.     The Commission wrongfully recognized an entity which is not the legitimate tribal governing body for purposes of, *inter alia*, its actions concerning Plaintiffs' Gaming Ordinance Amendment submissions.

69.     The Commission's recognition of the Lewis Council constitutes final agency action because it marks the "consummation" of the agency's decision making process, whereby "rights or obligations have been determined," and the decision is one from which "legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).   Further, the Commission acknowledged and informed Plaintiffs that no appeal was available.

70.     The Commission's decision to recognize an illegitimate Tribal governing body is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law; and was without observance of procedure required by law.

71.     Plaintiffs have suffered legal wrong and have been adversely affected as a result of Defendants' actions.

72.     The relief requested in this Second Claim for Relief also is necessary and appropriate in aid of the jurisdiction of this honorable Court and is agreeable to usages and principles of law, within the meaning of 28 U.S.C. § 1651.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that this honorable Court grant the following relief:

1.     Pursuant to 5 U.S.C. § 706(2), issue an order holding unlawful and setting aside the Commission's action concerning Plaintiffs' Gaming Ordinance amendments as arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law; and

2.     Pursuant to 5 U.S.C. § 706(1), issue an order compelling Defendants to make a decision regarding Plaintiffs' Gaming Ordinance amendment submissions in compliance with IGRA and the Federal regulations within 30 days, and further providing that this Court shall maintain jurisdiction over the matter to enforce Defendants' compliance with such relief; and

3.     Pursuant to 5 U.S.C. § 706(2), issue an order holding unlawful and setting aside the Commission's action recognizing the Lewis Group as the Tribe's governing body for purposes of

Plaintiffs' Gaming Ordinance amendments as arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law; and without observance of procedure required by law; and

4.      Issue such temporary and preliminary injunctive relief as is necessary to the resolution of this dispute; and

5.      Award costs, fees and expenses, and reasonable attorneys' fees and expenses, pursuant to and in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.      Such other further relief as this honorable Court may deem just and proper.

Respectfully submitted on March 29, 2013,

FREDERICKS PEEBLES & MORGAN LLP
2020 L Street, Suite 250
Sacramento, California 95811
(916) 441-2700


By: _____
        James Qaqundah

*Counsel for Plaintiffs Picayune Rancheria of the*
*Chukchansi Indians, Morris Reid, Dora Jones,*
*Dixie Jackson, and Harold Hammond, Sr.*